IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TAURUS RASHONE LASETER, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | |
| | ) | Civil Action No. 2:18-cv-444-MHH |
| v. | ) | (CR No. 2:15-cr-195-MHH) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RESPONDENT UNITED STATES' RESPONSE IN OPPOSITION TO TAURUS RASHONE LASETER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

COMES NOW the United States of America, by and through its attorney, Louis V. Franklin, Sr., United States Attorney for the Middle District of Alabama, and Curtis Ivy, Jr., Assistant United States Attorney for the Middle District of Alabama, in compliance with this Court's Order dated June 29, 2018 (Civ. Doc. 9)[1], and files this Motion to Dismiss, or in the Alternative, Opposition to Defendant's Motion Pursuant to 28 U.S.C. § 2255.  Civ. Doc. 1.

## I.    INTRODUCTION

The defendant's motion, while characterized as two grounds, appears to set forth six grounds of ineffective assistance of counsel.  Defendant asserts his counsel

---

[1] References to "Civ. Doc." are to the docket entries and documents in this civil § 2255 proceeding, Civil Case No. 2:18-cv-444-MHH.

was ineffective for failing to communicate with Defendant and inform him of the relevant circumstances and likely consequences of pleading guilty. Additionally, Defendant asserts that his counsel was ineffective for: (1) generally failing to investigate; (2) failing to negotiate a more favorable plea agreement; (3) failing to correctly discuss and explain the presentence investigative report; (4) failing to file substantive objections to the presentence investigative report; and (5) failing to argue mitigation of punishment and that his subsequent sentence was unreasonable. However, the current record and relevant law establish Defendant's claims are without merit. Accordingly, an evidentiary hearing is not needed, and Defendant's motion should be denied.

## II.     PROCEDURAL HISTORY

### A.     Conviction

As set forth in the Presentence Investigation Report ("PSR"), Defendant's conviction stemmed from an investigation conducted by the Drug Enforcement Administration ("DEA"). Specifically, on April 17, 2015, an informant working on behalf of DEA received a telephone call from an individual interested in purchasing 10 kilograms of cocaine and 100 pounds of marijuana. Doc. 120 at 5-6, ¶¶ 9-12. As the investigation continued, it was determined the individual that called the informant was Defendant. Subsequently, on April 20, 2015, Defendant again contacted the informant and told him that he would have the money to purchase 2 or

3 kilograms of cocaine.  Almost one week after initial contact, on April 22, 2015, the informant and Defendant scheduled a meeting to occur at the Wal-Mart retail store located on Eastern Boulevard in Montgomery, Alabama.  While performing surveillance, members of the DEA observed a Nissan Murano arrive at the Wal-Mart, the designated meet location.  The informant received a telephone call from Defendant advising he arrived.  The Murano pulled into a parking space adjacent to the informant's vehicle.  Thereafter, the informant entered the rear seat of the Murano.  Upon entering the vehicle, co-defendant Enesto Lernard Ivory showed the informant a large sum of United States currency contained in a shoe box.  The informant exited the vehicle.  Once the meeting concluded, agents approached the Murano and placed Defendant and Ivory under arrest.  Agents found and seized the shoebox containing the currency.  Two firearms were also recovered.

### B.   Indictment

Thereafter, the grand jury returned a three-count indictment.  Doc. 26.  Count One charged Defendant with conspiracy to distribute controlled substances, while Count Two charged Defendant with the unlawful use of a communication facility related on the telephone calls placed by Defendant. *Id*. at 1.  The gun charge set forth in Count Three derived from the events of April 20, 2015.  *Id*. at 2.

On September 23, 2015, the Government filed a notice to establish four prior convictions pursuant to 21 U.S.C. § 851.

3

### C.    Plea Agreement and Addendum

Subsequently, Defendant and the Government entered into a plea agreement. Doc. 71.    In that plea agreement, entered pursuant to Rules 11(c)(1)(A) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Government agreed it would recommend Defendant receive a three-level reduction from his offense level for his acceptance of responsibility.    *Id*. at 3, ¶ 1.    The Government further agreed to a sentence no higher than the middle of the guidelines, and to dismiss all other counts of the indictment upon conclusion of sentencing on Counts One and Three.    In turn, Defendant promised to: (1) plead guilty to Counts One and Three; (2) refrain from committing additional offenses; (3) waive his right to appeal or collaterally attack his conviction or sentence, and (4) to forfeit to the Government any and all firearms and ammunition in his possession.

### D.    Guilty Plea

On November 4, 2015, Defendant appeared before a magistrate judge and tendered his plea of guilty to Counts One and Three.    Doc. 73.    He did so pursuant to the above-described document.    *See* Doc. 71.    In fact, during the Defendant's colloquy with the Court, the Court specifically established Defendant understood the constitutional rights he was waiving by pleading guilty, including his right to a trial where the government would be required to prove his guilt beyond a reasonable doubt.    Doc. 127 at 12.    The Court also established Defendant understood the charges

4

to which he was pleading guilty, and the consequences of his guilty plea, including the fact Defendant faced a mandatory minimum sentence of 20 years of imprisonment and a maximum sentence of life imprisonment. *Id*. at 7-8, 19-20. Defendant stated under oath to the Court he was entering into his guilty plea freely and voluntarily, and he had not been threatened or coerced in any way into pleading guilty, nor been promised any particular sentence. *Id*. at 5-7. Defendant also stated under oath to the Court he had discussed his guilty plea fully with his attorney, he was satisfied with his attorney's representation, and he was in fact guilty of Counts One and Three. *Id*. at 4, 19. Given this record, the Court accepted Defendant's guilty plea to Counts One and Three. (*Id*. at 19-20).

### E. Presentence Investigation Report

On March 22, 2016, the United States Probation Office (Probation) submitted to the district court and to the parties its final PSR. *See* Doc. 120. In that PSR, Probation recommended Defendant be treated as a career offender pursuant to § 4B1.1(a). *Id*. at 7, ¶ 24. As a result of his career offender status and the fact the statutory maximum sentence for his offense was life imprisonment, Defendant's adjusted offense level was 37. *Id*. at 7, ¶ 25; *see* U.S.S.G. § 4B1.1(b)(1). After a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a)–(b), Defendant's total offense level was 34. Doc. 120 at 7, ¶¶ 26-28.

Because he was a career offender, Defendant's criminal history category was VI. Doc. 120 at 11, ¶ 46; *see* U.S.S.G. § 4B1.1(b). Defendant's total offense level of 34 and criminal history category of VI yielded an advisory Guidelines range of 322 to 387 months' imprisonment. Doc. 120 at 17, ¶ 67; *see* U.S.S.G. Ch. 5, Pt. A (sent'g table).

Defendant did not raise any objections to the PSR. *See* PSR Addendum.

**F.      Defendant's Sentencing Memorandum**

On April 7, 2017, Defendant filed a sentencing memorandum. Doc. 111. The Government did not file a § 5K1.1 motion or a § 3553(e) motion.

**G.      Sentencing Hearing**

A sentencing hearing was held April 12, 2017. Doc. 118. After hearing Defendant and his attorney, the district court sentenced Defendant to the mandatory minimum term of 240 months' imprisonment on Count One and 60 months' consecutive thereto on Count Three. Doc. 122. *Id*. at 9.

**H.      Judgment**

Final judgment was entered in on or about April 18, 2017. Doc. 122.

## III. ARGUMENT

### A. Defendant has procedurally defaulted his claims and has not shown cause for failing to raise his claims previously or shown actual prejudice affecting a fundamental right and cannot show actual innocence.

Section 2255 provides redress for jurisdictional or harmful constitutional errors, and those errors, which involve a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). The United States asserts Movant's Petition is procedurally defaulted by his failure to raise the issue related to the reasonableness of his sentence on direct appeal.

Generally, a prisoner who does not preserve an issue at trial, sentencing, or on direct appeal has procedurally defaulted his or her challenge to raise that issue on collateral review. *United States v. Frady*, 456 U.S. 152, 166-168 (1982). A movant is not entitled to litigate in a Section 2255 proceeding issues that have been, or should have been, raised and considered on direct appeal. *See United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981); *Sanders v. United States*, 373 U.S. 1, 17 (1962); *Kaufman v. United States*, 394 U.S. 217, 230 (1969); *Davis v. United States*, 417 U.S. 333, 342 (1973). Allowing a prisoner the continued opportunity to challenge his or her conviction and sentence would improperly allow the prisoner the opportunity to use collateral attack as a direct appeal. *See Burke v. United States*,

152 F.3d 1329, 1331 (11th Cir. 1998). The Supreme Court has prohibited this practice. *United States v. Timmreck*, 441 U.S. 780, 783-84 (1979); *United States v. Frady*, 456 U.S. at 167-69; *Bousley v. United States*, 523 U.S. 614, 621-22 (1998);[2] *Parks v. United States*, 832 F.2d 1244-46 (11th Cir. 1987).

The Eleventh Circuit succinctly summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding …. A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development…. When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error…. Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of cause for the procedural default….

*Mills v. United States*, 36 F.3d 1052, 1055-1056. (11th Cir. 1994) (internal citations omitted).

Defendant failed to present any claims in his motion on direct appeal, thus the right to raise them herein has been procedurally defaulted. *See McKay v. United*

---

[2] "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States,* 538 U.S. 500, 504 (2003).

*States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (holding that defendant who failed to file an appeal and, therefore, failed to advance a claim on appeal that he was erroneously sentenced as a career offender under the Sentencing Guidelines, procedurally defaulted the sentencing claim); *also see*, *Reece v. United States*, 119 F.3d 1462, 1467 n.9 (11th Cir. 1997) (noting that double procedural default occurs when defendant neither objects in the trial court nor on direct appeal).

Section 2255 applies to non-jurisdictional claims based on a federal statute or rule only if the claim alleges a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). The burden of demonstrating cause and prejudice or a miscarriage of justice is on the movant. *See, e.g., Bousley v. United States*, 523 U.S. at 622 (noting "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' … or that he is 'actually innocent' "); *see also Frady*, 456 U.S. 152, 167-168 (1982).

The instant motion for relief is silent as to Defendant's cause for failure to raise these issues on direct appeal. This failure, when coupled with the fact that Defendant does not dispute his guilt regarding the crime for which he is presently

incarcerated is sufficient to warrant dismissal of his claims as he has failed to produce any argument, much less facts, to cure his procedural default.

## IV.  MOVANT HAS NOT SHOWN THAT HIS ATTORNEY WAS INEFFECTIVE.

### A.  Standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court reaffirmed the Sixth Amendment guarantees a criminal defendant the "effective" assistance of counsel: "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id*. at 685.  The Court explained in giving meaning to that requirement, "we must take its purpose – to ensure a fair trial – as the guide." *Id*. at 686.  Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*.

In order to avoid frivolous claims made by defendants dissatisfied with their judgment and aided with the benefit of hindsight, there is a strong presumption counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690.  The burden is therefore on the accused to demonstrate the denial of effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

In keeping with its focus on the adversarial process, the Court in *Strickland* held a claim of ineffective assistance of counsel has two components - inadequate performance by counsel, and prejudice resulting from that inadequate performance. The first part of the test requires the defendant to show, "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The governing performance standards depend in large part on the standards set by the legal profession: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

In applying the "professional norms" standards, however, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000); *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995). That is because of the retrospective nature of ineffective-assistance claims: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Accordingly, the Court in *Strickland* held, "[a] fair assessment of attorney performance requires that every

11

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct."

Even if the Defendant is able to overcome the strong presumption his counsel's conduct was reasonable and show that it was in fact deficient, the prejudice component of *Strickland* requires the Defendant to "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would be different." *Id*. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The Supreme Court has further established this (prejudice) analysis should not focus solely on the outcome, but must take into account whether the result of the proceedings is "fundamentally unfair or reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). That is to say, the right to effective assistance of counsel does not exist to make sure that a defendant will receive the outcome he or she desires, but to ensure that the adversarial process produces the *true* outcome. The right exists to ensure that the process is fundamentally fair in light of all of the circumstances and is conducive to the revelation of truth regarding guilt and innocence and to the administration of justice. In light of these principles and presumptions, the Eleventh Circuit has recognized that "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Waters*, 46 F.3d at 1511; *see also Chandler*, 218 F.3d at 1313.

The Defendant has the burden of establishing prejudice, and it is not enough for the Defendant to show the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. *Strickland*, 466 U.S. at 693 (citation omitted).

Instead, "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Returning to first principles, the Court in *Strickland* explained that "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, the gravamen of the *Strickland* inquiry remains "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696.

The record rebuts Defendant's claims of ineffective assistance of counsel. The record is clear defense counsel's actions were reasonable and did not prejudice him. Accordingly, the Court should deny Defendant's § 2255 motion.

## B.    Analysis

### 1.    Involuntary Plea

Defendant asserts his guilty plea was involuntary based on ineffective assistance of counsel. Defendant asserts counsel did not adequately inform him of the consequences of pleading guilty as opposed to proceeding to trial. Defendant, however, offers no credible support for his claim. Nonetheless, Defendant's claim is affirmatively contradicted by the record and relevant law.

It is well settled "[t]he plea colloquy, provided in Rule 11 of the Federal Rules of Criminal Procedure, constitutes the constitutional minimum requirements for a knowing and voluntary plea for federal courts ...." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991). There is a strong presumption that, (1) a plea created by proceedings pursuant to Federal Rules of Criminal Procedure 11 is knowing and voluntary; and (2) statements made during the Rule 11 plea colloquy are true. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800, n.8 (11th Cir. 1987); *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false").

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory

14

allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). A court must reasonably rely on the plea colloquy and the signed plea agreement for the proposition a defendant understood the agreement. *Gonzalez-Mercado*, 808 F.2d at 800, n.10.

In the instant case, Defendant stated under oath to the Court he understood he was required to answer truthfully:

Court: Gentlemen, I'm going to ask each of you some questions, and I'm going to ask each of you the same questions. I want Mr. Ivory to respond first and then Mr. Laseter to respond next. Do you understand that you're now under oath, and if you answer any of my questions falsely you'll be subject to a later prosecution for perjury or making a false statement?

Defendant Laseter: Yes, sir.

Defendant further stated under oath he understood the minimum and maximum penalties that he faced, including the fact he was subject to a mandatory minimum sentence of 20 years. Doc. 127 at 7-8. Likewise, Defendant stated under oath he had not been coerced in any way into pleading guilty, nor been promised any particular sentence:

Court: Has anyone attempted in any way to force you or threaten you to get you to enter into the plea agreement?

Defendant Laseter: No, Sir. (Doc. 127 at 5).

Court: Other than the terms of the plea agreement, are you pleading guilty of your own free will and because you are, in fact, guilty?

Defendant Laseter: Yes, Sir. (Doc. 127 at 7).

Defendant also stated under oath he understood he had the right to persist on a trial and the consequences of entering a plea of guilty:

Court: Do you know that you do have a right to plead not guilty, as you have previously done, and that you may persist in that plea and persist in that plea throughout trial, and that you would have a right to a trial by jury?

Defendant Laseter: Yes, sir.

Court: Do you understand that at trial you would be presumed to be innocent, and the government would have to prove your guilt beyond a reasonable doubt and by competent evidence?

Defendant Laseter: Yes, sir.

Court: And do you know and understand that at trial you would have the right to have your attorney to assist you at trial and every other

stage of the proceedings, and that you and your lawyer would have the right to see all the witnesses and all the evidence and to cross-examine them in your defense, and that you would have the right on your own part to decline to testify unless you voluntarily chose to do so in your own defense?

Defendant Laseter:  Yes, sir.

Court:  And do you understand that if you went to trial, that if you chose not to put on any evidence at all or not to testify, that that could not be used against you in any way?

Defendant Laseter:  Yes, sir.

Court:  Do you understand that if you enter your plea of guilty here today, that if I find that there are sufficient facts from which to find you guilty, then you will be adjudged guilty and you will not have a trial because you will have waived your rights to a trial and, therefore, you will have waived all the rights that go along with a trial that I've just explained to you?

Defendant Laseter:  Yes, sir.  *Id.* at 12-13.

Notwithstanding his statements made under oath, Defendant now makes contrary allegations in the instant motion, stating he did not understand the consequences of his plea.  Where Defendant's allegations in his motion are contrary

to the oral statements he made under oath to the Court, comparatively, those allegations are entitled to little weight. *See Bryan v. United States*, 492 F.2d 775, 779-80 (5th Cir. 1974)[3] (where defendant tendered only his own affidavit in support of his allegations, and the affidavit directly contradicted his statements made at his guilty plea hearing, the district court properly denied relief); *see also Oliver v. United States*, 292 Fed. Appx. 886, 888, n.2 (11th Cir. 2008) (defendant's statement made in his affidavit under the penalty of perjury is entitled to more weight than defendant's contrary statement made in his § 2255 motion); *Patel v. United States*, 252 Fed. Appx. 970, 975 (11th Cir. 2007) (holding plea voluntary where defendant's allegations are in direct conflict with his statements during his plea colloquy, and he produced no evidence to challenge the veracity of his sworn testimony). Defendant has failed to meet the appropriately heavy burden required to establish his statements made under oath to the Court at his plea colloquy were false. *See United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (holding "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false").

---

[3] Decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

The record affirmatively contradicts Defendant's claim he did not understand the consequences of his guilty plea. Thus, Defendant's claim his guilty plea was involuntary based on ineffective assistance of counsel fails.

### 2. Alleged Failure to Investigate

To fulfill his duty to provide effective assistance, counsel merely must make an independent examination of the facts, circumstances, pleadings, and laws involved, and then offer his informed opinion as to the best course to be followed to protect the client's interests. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Defendant's general allegation fails to establish he was provided deficient assistance. Thus, his claim lacks merit.

It is noted the defense was provided with extensive pretrial discovery by the Government. Contained within the discovery were copies of investigative reports, reports of forensic examinations, investigative documents, copies of evidence seized during the investigation, photographs, and recordings. Therefore, the defense was provided a comprehensive and complete perspective on the investigation and the evidence which formed the basis for the Government's case against Defendant.

Under *Strickland*, counsel's decision regarding investigation need only be reasonable to fall within the wide range of competent assistance... "counsel need not always investigate before pursuing or not pursuing a line defense investigation... (even a non-exhaustive, preliminary investigation) is not required for counsel

reasonably to decline to investigate a line of defense thoroughly." *Chandler v. United States*, 218 F.3d 1305, 1317-18 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 689). While Defendant maintains counsel failed to investigate, he fails to acknowledge the daunting challenge defense counsel faced in addressing the compelling weight of evidence against Defendant. Moreover, counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial. When a client pleads guilty, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecutions offer and going to trial. *Wofford*, 748 F.2d at 1508.

### 3. Failure to negotiate a more favorable plea agreement

Next, Defendant claims his attorney was ineffective by not negotiating a more favorable plea agreement for him. Defendant's claim fails because he has not demonstrated his attorney acted ineffectively with respect to the plea. A bald, conclusory allegation is simply insufficient to support his motion. *See United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) (finding that, because appellant's contentions were wholly conclusory and unsupported by factual allegations or proof, they were without merit). In fact, Defendant's plea agreement was quite favorable. First, the Government agreed to dismiss Count 2 of the indictment. In addition, the

Government agreed to recommend the maximum reduction for acceptance of responsibility.

Defendant acknowledged his satisfaction with his counsel in the plea agreement and at his subsequent change of plea hearing. Even assuming Defendant's counsel should have proffered substitute conditions be included in the plea agreement, there is no evidence the Government would have acquiesced. Plea agreements and their terms are a matter of prosecutorial discretion, and the Government is not required to accept any plea deal offered by a defendant. *See United States v. Palmer*, 809 F.2d 1504, 1508 (11th Cir. 1987).

A petitioner fails to establish he was prejudiced by counsel's failure to negotiate a more favorable plea agreement with nothing more than the bald assertion that such an agreement might have been possible. *See Cummings v. United States*, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013); *Guyadeen v. United States*, 2006 WL 1360894, at *2-3 (M.D. Fla. May 17, 2006) (finding no prejudice because, "even assuming [petitioner's] counsel should have proffered that substitute conditions be included in the plea agreement, there is no evidence that the government would have acquiesced."); *Freeman v. United States*, 2011 WL 2680494, at *5 (N.D. Ga. June 10, 2011), adopted sub nom by *United States v. Warner-Freeman*, 2011 WL 2680509 (N.D. Ga. July 7, 2011) (holding "[a]ll [m]ovant shows is that [he] would

have preferred a more favorable plea agreement-such a showing could be made by almost anyone who has entered into a guilty plea.").

Accordingly, Defendant fails to show he was prejudiced because his assertion counsel could have obtained a more favorable plea agreement is wholly speculative.

Even if Defendant had shown any incompetence by his attorney, which he has not, Defendant's claim would still fail because he cannot demonstrate any prejudice. There is no reasonable possibility that, had counsel acted differently, the Government would have agreed to such a plea. Because Defendant failed to show any incompetence or prejudice from counsel's actions with respect to Defendant's guilty plea, Claim 3 should be denied.

### 4. Alleged failure to correctly discuss and explain the PSR.

Defendant also contends his counsel failed to adequately explain the significance of the PSR to him.[4] During the sentencing hearing, Defendant addressed the Court at length and apologized for his criminal actions, but he never objected to his counsel or voiced any complaints about his counsel.

Nonetheless, the Court fulfilled its obligation under Fed. R. Crim. P. 32(i)(1)(A) when it inquired at the outset of the sentencing hearing that defense counsel and Defendant had 35 days in which to review the PSR. Doc. 127 at 2.

---

[4] In this assertion, although difficult to decipher, it appears the Defendant may be complaining while he reviewed the PSR, he did not understand its significance.

Thereafter, defense counsel argued for a downward variance. Defendant cannot show his substantial rights were affected, because he does not claim he would have challenged the PSR. Moreover, Defendant's failure to raise any of the issues he asserts was neither professional error nor prejudicial. Defendant leaves this Court to speculate in this regard, falling well short of his burden on habeas review. "To prove prejudice, the movant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's unprofessional errors." *Patel*, 252 Fed. Appx. at 972; *Strickland*, 466 U.S. at 694.

### 5.    Failure to file substantive objections to the PSR.

Like his other claims, Defendant's claim of ineffective assistance of counsel at sentencing lacks merit. Defendant argues counsel was ineffective because he failed to file substantive objections to the PSR. As previously noted, in order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden to prove by a preponderance of evidence both incompetence and prejudice. *Chandler*, 218 F.3d at 1312-13; *see also Strickland*, 466 U.S. at 668. The Eleventh Circuit has made clear counsel does not render ineffective assistance for failing to argue a meritless claim. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (holding "[c]ounsel was not ineffective for failing to raise these issues because they clearly lack merit"); *Meeks v. Moore*, 216 F.3d 951, 968 (11th Cir. 2000) (affirming district court's assertion counsel has no duty to bring forth non-meritorious

motions); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (noting "counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit."); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (crediting as professionally reasonable counsel's decision not to file what he believed to be a meritless motion); *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989).

Moreover, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "cases in which habeas petitioners can properly prevail ... are few and far between." *Chandler*, at 1313. Rightly so, because the test is *not* what the 'best' lawyer would do, or even what most 'good' lawyers might do; rather, whether a *reasonable* lawyer might have acted as counsel in the case at hand. *Dingle v. Secretary for Dept. of Corrections*, 480 F.3d 1092, 1099 (11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.' " *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Further, " '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland*, 466 U.S. at 686.

As the record in this case demonstrates, counsel did everything reasonably prudent in his representation and defense of Defendant at sentencing. To now retrospectively analyze counsel's representation and conduct in the case and suggest it was less than highly effective is to employ the use of a very analytical tool which the appellate courts have specifically admonished should not be employed. A reviewing court "must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance 'from the perspective at the time.' " *Chandler*, 218 F.3d at 1316 (*quoting Strickland*, 466 U.S. at 689); *accord Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). "The widespread use of the tactic of attacking trial counsel by showing what 'might have been' proves that nothing is clearer than hindsight--except perhaps the rule that we will not judge trial counsel's performance through hindsight." *Grayson*, 257 F.3d at 1216; *quoting Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995).

Even employing the benefit of hindsight--one is left asking what additional effort could counsel have undertaken? This reality contradicts the notion made by Defendant that somehow, counsel's conduct and strategy was "so patently unreasonable that no competent attorney would have chosen it." *Dingle*, 480 F.3d at 1099. In short, counsel's conduct in this case was not unreasonable, and any competent attorney would have undertaken Defendant's representation in a like fashion.

**6.    Failure to argue for mitigation of punishment and object as to his sentence being unreasonable.**

Defendant next maintains his counsel was ineffective for failing to proffer mitigating evidence at and before sentencing.  Construed in its most discernable light, the Defendant's claim raised in Ground Six is barred because it was not raised on direct appeal and the Defendant has not shown cause for failing to raise the claim and actual prejudice resulting from not raising it.  *United States v. Nyhuis*, 211 F.3d 1340, 1343-44 (11th Cir. 2000); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989); *Parks v. United States*, 832 F.2d 1244, 1245 (11th Cir. 1987); *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004).  This claim is without merit.  It is vague, conclusory, unsupported by credible supporting evidence, and entirely dependent on his own allegations.  Moreover, the contention is refuted by the record.

Petitioner fails to set forth what mitigating evidence defense counsel could have presented at sentencing that would have resulted in a different outcome. Defendant's bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. Therefore, Petitioner is not entitled to relief on this issue.[5]

---

[5] Numerous instances of errors or mistakes by defense counsel at sentencing have not been held to constitute ineffective assistance of counsel.  *See Guyton v. United States*, 447 Fed. Appx. 136 (11th Cir. 2011) (holding that counsel was not ineffective for failing to argue that defendant's prior conviction could not be used as a predicate for the career offender enhancement); *United States v. Lattimore*, 345 Fed. Appx. 506 (11th Cir. 2009) (holding that counsel was not ineffective for failing to object to an enhancement for obstruction of justice); *Hutcherson v. United States*, 425 Fed. Appx. 801 (11th Cir. 2011) (holding that counsel was not ineffective for failing to object to PSR recommendation that defendant's prior conviction was a crime of violence).

Petitioner is further obligated to provide factual support for his contentions regarding alleged deficiencies in counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990).

## V. LAW REGARDING CONCLUSORY ALLEGATIONS AND WHETHER AN EVIDENTIARY HEARING NEED BE HELD.

The Defendant has the burden of establishing the need for an evidentiary hearing. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983). A defendant is not entitled to a hearing, or entitled to prevail on a § 2255 petition, where the defendant fails to present credible supporting evidence, other than his own allegations, to show he is entitled to relief. *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). It is proper for a court to deny without a hearing a defendant's § 2255 petition that is based on conclusory allegations or unsupported generalizations. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Lynn*, 365 F.3d at 1239. A defendant is "not entitled to an evidentiary hearing when [his] claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.' " *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir.

1990) *quoting Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Furthermore, where, even assuming the Defendant's allegations regarding his counsel's performance are true, the Defendant fails to establish that performance prejudiced him, the court need not conduct an evidentiary hearing. *Schultz*, 701 F.2d at 901.

Any facts not specifically admitted in this response are denied, and the arguments made are in the alternative.

## VI.    CONCLUSION

Defendant is obviously discontent with his sentence. Nonetheless, his claims are barred as set forth more fully above. To the extent his claims are not barred, they are without merit. Defendant was competently and vigorously represented. Accordingly, for the above reasons, Petitioner/Defendant Laseter's § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 31st day of July, 2018.

LOUIS V. FRANKLIN, SR.
UNITED STATES ATTORNEY


*/s/Curtis Ivy, Jr.*
CURTIS IVY, JR.
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36104
(334) 223-7280

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TAURUS RASHONE LASETER, | ) | |
| | ) | |
| Plaintiff/Defendant, | ) | |
| | ) | Civil No. 2:18-cv-444-MHH-TFM |
| v. | ) | (Cr. No. 2:15-cr-195- MHH-TFM) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system; and I certify that I placed a copy of same in the United States Mail, postage prepaid and properly addressed to Plaintiff/Defendant Taurus Rashone Laseter, Reg. No. 15642-002, Edgefield FCI, Inmate Mail/Parcels, PO Box 725, Edgefield, SC  29824.

Respectfully submitted,


*/s/ Curtis Ivy, Jr.*
CURTIS IVY, JR.
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36104
(334) 223-7280