IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED
NORTHERN DIVISION

2018 AUG 22 A 10: 41

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

TAURUS RASHONE LASETER, )
)
Movant, )
)
v. ) Civil # 2:18-cv-00444-MHH-TFM
) Case # 2:15-cr-00195-MHH-TFM-2
UNITED STATES OF AMERICA, )
)
Respondent. )

### REPLY TO RESPONDENT UNITED STATES' RESPONSE IN OPPOSITION TO TAURUS RASHONE LASETER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

COMES Movant, TAURUS RASHONE LASETER ("Laseter"), appearing *pro se,* and replies to government's Response in Opposition ("GR") to Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") as follows:

### PRELIMINARY STATEMENT

As a preliminary matter, Laseter respectfully requests that this Court be mindful that *pro se* litigants are entitled to liberal construction of their pleadings. See *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Haines v Kerner*, 404 U.S. 519, 520 (1972). Secondly, Laseter adopts by reference and in whole his arguments previously filed in his § 2255 Motion. See CvDoc. 1.[1]

---

[1] "CvDoc." refers to the Docket Report in the United States District Court for the Middle District of Alabama, Northern Division, in Civil No. 2:18-cv-00444-MHH-TFM, which is immediately followed by the Docket Entry Number.

1

## REPLY TO GOVERNMENT'S RESPONSE

The GR is divided into six (6) main sections: (I) Introduction; (II) Procedural History; (III) Argument; and (IV) Movant Has Not Shown That His Attorney Was Ineffective; (V) Law Regarding Conclusory Allegations and Whether an Evidentiary Hearing Need Be Held; and (VI) Conclusion. See CvDoc. 11. Laseter will reply sequentially to each section of the GR as follows:

### I. INTRODUCTION

The government in this section of the GR gives a fair and accurate reading of the summary of claims in this case. *Id.* at 1-2. However, Laseter objects to the government's position that: (1) his claims are without merit; (2) an evidentiary hearing is not needed, (3) and his motion should be denied.

### II. PROCEDURAL HISTORY

This main section of the GR is divided into eight (8) subsections: (A) Conviction; (B) Indictment; (C) Plea Agreement and Addendum; (D) Guilty Plea; (E) Presentence Investigation Report; (F) Defendant's Sentencing Memorandum; (G) Sentencing Hearing; and (H) Judgment. The government in each subsection of the GR gives a fair and accurate reading of the procedural background in this case. *Id.* at 2-6. Laseter does not object to the government's summary of proceedings in this case. However, its is important to note that Laseter agreed to sign the Plea Agreement, as he wholly relied on his counsel's advise. Pursuant to the Plea Agreement, Laseter waived his right to appeal except collateral attack based upon ineffective assistance of counsel or prosecutorial misconduct.

## III. ARGUMENT

In this section of the GR, the government asserts that Laseter is procedurally defaulted by his failure to raise the issue related to the reasonableness of his sentence on direct appeal. *Id.* at 7-10. Nonetheless, Laseter's § 2255 Motion raises claims of ineffective assistance of counsel, which are not generally raised on direct appeal. See *United States v. Merrill*, 513 F.3d 1293, 1308 (11th Cir. 2008). "An ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255." *United States v. Butler*, 41 F.3d 1435, 1437 n.1 (11th Cir. 1995).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372.

3

## IV. MOVANT HAS NOT SHOWN THAT HIS ATTORNEY WAS INEFFECTIVE

This section of the GR is divided into two (2) subsections: (A) Standard; and (B) Analysis. Laseter will again reply to each subsection sequentially as follows:

### A. Standard

In this subsection of the GR, the government merely gives the legal standard for § 2255 Motions per the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *Id.* at 10-13. Laseter does not object or take exception to this section of the GR.

### B. Analysis

This subsection of the GR is divided into six (6) subparts: (1) Involuntary Plea; (2) Alleged Failure to Investigate; (3) Failure to Negotiate a More Favorable Plea Agreement; (4) Alleged Failure to Correctly Discuss and Explain the PSR; (5) Failure to file Substantive Objections to the PSR; and (6) Failure to Argue for Mitigation of Punishment and Object as to His Sentence Being Unreasonable. *Id.* at 11-27. Again, Laseter will reply sequentially to each subpart, as follows.

#### 1-3. Involuntary Plea, Alleged Failure to Investigate, and Failure to Negotiate a More Favorable Plea Agreement

In this case, there was not any reasonable communication from the beginning of his case between the parties so that Laseter could effectively participate in his legal representation. He failed to reasonably consult with Laseter about the means to be used to accomplish his objectives other than push him to plead guilty.

Here, Shelnutt failed to file substantive pretrial motions on behalf of Laseter to determine the strength of the government's case-in-chief. Had he filed motions such as a Request for Rule 404(b) of the Federal Rules of Evidence [Material]; a Motion to Dismiss for Want of Sufficiency;

4

a Motion to Obtain the Grand Jury Testimony; and Motion to Suppress. Such fundamental pretrial motions are essential in the development and evaluation in assessing the strengths and weaknesses of the government's case, and would have significantly aided the defense in the decisional process of whether to negotiate a Plea Agreement or to proceed to trial.

Because of counsel's ineffectiveness, Laseter was unable to obtain the discovery that he needed to be fully informed so that he could make an informed decision on whether to plead guilty or proceed to trial. Without this information, he was unable to make an informed decision. Had he been given the discovery in order to assess and evaluate the government's case-in-chief, there is a reasonable probability that he would have opted to proceed to trial.

Shelnutt failed to provide sufficient information to Laseter so that he could participate intelligently in decisions concerning the objectives of his representation and the means by which they would be pursued. Adequacy of communication depends in part on the kind of advice or assistance that is involved. From the beginning, Shelnutt never made proceeding to trial an option for him. He failed to file any substantive pretrial motions on behalf of Laseter to put the government's case to any kind of an adversarial test. Shelnutt failed to consult and explain the general strategy and prospects of success and the likely result in the sentence he would receive. He adamantly advised Laseter that he needed to plead guilty and he would receive a reduction for acceptance of responsibility. Shelnutt failed to inform Laseter any kind of affirmative defenses that were potentially available to him.

In this case, without reviewing any evidence or discovery with Laseter, discussing the relevant circumstances, the strength of the government's case or any other type of strategy, Shelnutt made Laseter plead guilty. Because Laseter wholly relied on Shelnutt's advice, he acquiesced and

followed Shelnutt's advice, and pled guilty and received a 300-month sentence because of the deficient advice given to him by Shelnutt. Of course, had Laseter been properly informed, there is a reasonable probability that he would have opted to proceed to trial.

Shelnutt failed to conduct an independent investigation and research the applicable laws. All that Shelnutt did was review the government's case file and let Laseter plead guilty. This kind of lack of investigation was deficient performance. Shelnutt never made proceeding to trial an option to Laseter. As such, he was forced to proceed to plead guilty. Had Shelnutt attempted to negotiate a palatable plea agreement with the government, there is a reasonable probability that Laseter would have proceeded to trail or plead guilty without a Plea Agreement, and receive a significantly less harsh sentence. The facts are clear and obvious that had Laseter been allowed to enter into a negotiated plea agreement with the government, his sentence almost certainly would have been less severe than a 300-month sentence. As such, Laseter was actually prejudiced by Shelnutt's deficient performance.

### 4-5. Alleged Failure to Correctly Discuss and Explain the PSR and Failure to file Substantive Objections to the PSR

Prior to sentencing, the PSR was released by the probation department. Laseter had no idea what his sentence was going to be until he was sentenced by the Judge because his attorney never reviewed, discussed or explained the PSR and its calculations with him. Laseter was shocked when he first saw the recommended calculations of the PSR. He wanted Shelnutt to object to the PSR. He wanted him to challenge his 851 enhancement and to object to his criminal history overstating the seriousness of his previous offenses he committed. Shelnutt failed to file any objections.

### 6. Failure to Argue for Mitigation of Punishment and Object as to His Sentence Being Unreasonable

With regard to the 18 U.S.C. § 3553(a) sentencing factors, Shelnutt failed to file any kind of a motion for a downward variance on behalf of Laseter. He also failed to object to Laseter's sentencing being substantively unreasonable. As such, none of the above issues would have been preserved for appellate review. Therefore, Shelnutt's performance was ineffective for his failure to preserve issues for appellate review. It is clear and obvious that Shelnutt had no intention of preserving any objections or issues for appellate review because he never intended to file a notice of appeal. Had Shelnutt been prepared, argue objections to the PSR and argued for mitigation of his sentence, there is a reasonable that Laseter would have received a less harsh sentence.

<u>In Light of *Dean v. United States*, No. 15-9260, 2017 U.S. LEXIS 2190 (U.S. April 3, 2017), the District Court Erred in Concluding That it Could Not Vary From the Guidelines Range Based on the Mandatory Minimum Sentences Laseter Would Receive Under § 924(c).</u>

Recently, the United States Supreme Court decided *Dean v. United States*, (No. 15-9260) (S. Ct. April 3, 2017). In *Dean*, defendants Dean and his brother committed two robberies; Dean's brother threatened and assaulted the victim with a gun, while Dean searched for valuables. Dean was convicted of multiple robbery and firearms counts, and two counts under 18 U.S.C. 924(c), which criminalizes using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime, or possessing a firearm in furtherance of such an underlying crime. The section mandates a penalty "in addition to the punishment provided for [the predicate] crime," to run consecutively to any sentence for the predicate crime. A first 924(c) conviction carries a five-year minimum penalty; a second conviction carries an additional 25-year mandatory minimum. For Dean, that meant 30 years, to be served after his sentence for other counts of conviction. The court

7

concluded that it could not vary from the Guidelines range based on the sentences imposed under section 924(c). The Eighth Circuit affirmed. The Supreme Court reversed. Section 924(c) does not prevent a sentencing court from considering a mandatory minimum imposed under that provision when calculating an appropriate sentence for the predicate offense. Guidelines section 3553(a) specifies the factors courts are to consider when imposing a sentence. The sentencing provisions permit a court imposing a sentence on one count to consider sentences imposed on other counts. The 3553(a) factors may be considered when determining a prison sentence for each individual offense in a multi-count case. Section 924(c) says nothing about the length of a non-924(c) sentence, nor about what information a court may consider in determining that sentence. Nothing in the requirement of consecutive sentences prevents a court from imposing a 30-year sentence under section 924(c) and a one-day sentence for the predicate crime, provided those terms run consecutively.

Decided Apr. 3, 2017 (581 U.S. ___). Eighth Circuit/Reversed and remanded. Chief Justice Roberts for a unanimous Court. The Court held that 18 U.S.C. § 924(c)—which mandates certain terms of imprisonment for using or carrying a firearm in furtherance of specified predicate crimes—does not preclude a sentencing court from considering the mandatory sentence required by that provision when calculating an appropriate sentence for the predicate offense.

Petitioner was convicted of multiple robbery and firearms counts, as well as two counts of possessing a firearm in furtherance of a crime of violence in violation of § 924(c). At sentencing, petitioner asked the district court to consider his 30-year mandatory minimum sentence for the § 924(c) offenses when calculating the sentences for his other crimes. The district court refused, and the Eighth Circuit affirmed. Reversing, the Supreme Court reasoned that "sentencing courts have

long enjoyed discretion in the information they may consider when setting an appropriate sentence." The Court rejected the Government's argument that district courts should calculate the sentence for each offense while disregarding whatever sentences a defendant faces on other counts. "Nothing in the law requires such an approach." Section 924(c) simply requires that any mandatory minimum be imposed "in addition to" the sentence for the predicate offense, and that the mandatory sentence run consecutively to any other term of imprisonment imposed on the defendant, and those two requirements do not restrict a sentencing court's ability to consider a sentence imposed under § 924(c) when calculating the sentence for the predicate count.

U.S. District Judge Mark Bennett at sentencing indicated that, "if [he] could look at a combined package" of all the offenses together, "360 months plus 1 day" would be "more than sufficient for a sentence in this case." But, Bennett continued, he lacked discretion to "go down to one day" for all the other convictions because precedent in the U.S. Court of Appeals for the 8th Circuit required him "to look at [the underlying offenses] separately" from the Section 924(c) counts. Bennett did grant a downward variance to 40 months of imprisonment for Dean's other felonies. Dean thus received a total sentence of 400 months of imprisonment (33.3 years). On appeal, the 8th Circuit rejected Dean's assertion that Bennett had discretion to impose only a one-day sentence for his other felonies.

However, before the Supreme Court, Dean cites to both sentencing statutes and sentencing traditions to support his contention that district judges can and should be able to consider applicable consecutive mandatory minimums when selecting a sentence for an underlying predicate crime. Dean stresses particularly the provisions of 18 U.S.C. §§ 3553 and 3661. Section 3553 instructs a sentencing court to impose a sentence "sufficient, but not greater than necessary," to comply with

Congress' statutory-sentencing purposes, and Dean argues that "implementing that command requires taking into account a vast range of information about the defendant, including the plainly relevant fact that he will also serve a lengthy mandatory minimum sentence." Section 3661 further provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct" of a defendant that a district court "may receive and consider for the purpose of imposing an appropriate sentence." Dean highlights how the Supreme Court has referenced Section 3661's "plain" and "broad" language to preclude creating any kind of "a blanket prohibition against considering certain types of evidence at sentencing."

Dean goes on to note that another statute, 18 U.S.C. § 1028A, which imposes consecutive mandatory minimums for identity theft, expressly states that a district court "shall not in any way reduce" the underlying sentence based on, "or otherwise take into account," the mandatory minimum when determining the proper sentence for the underlying offense. He contends that it would be inappropriate to read a similar limitation on sentencing discretion for underlying offenses into Section 924(c) absent any similar language. Rounding out his statutory arguments, Dean cites the legislative history of Section 924(c) and maintains that the rule of lenity demands an interpretation in his favor if the statutory language creates ambiguity.

In the government's view, other statutory sentencing provisions and the legislative history of Section 924(c) bolster its arguments for limiting judicial sentencing discretion in this context. Broader sentencing provisions, the government explains, afford judges in other settings discretion to impose sentences concurrently or consecutively, but the very point of Section 924(c) was to "eliminate[] a sentencing court's normal authority ... to determine the total, aggregate length of imprisonment from multiple terms of imprisonment." And the provision's "drafting history

10

demonstrates Congress's intent to withdraw discretionary sentencing authority that might otherwise allow sentencing judges to eliminate Section 924(c)'s mandatory additional punishment." Moreover, the government continues, interpreting Section 924(c) to require additional punishment does not violate Section 3661's provisions about relevant sentencing considerations, nor is it undermined by the broader limit on sentencing discretion Congress subsequently adopted in the aggravated identify-theft provisions in Section 1028A.

Summarizing its take on *Dean*'s arguments, the government asserts that the "only apparent function of petitioner's reduced-to-one-day sentencing regime would be to avoid the congressionally imposed consecutive, additional, mandatory-minimum sentences in Section 924(c). That is reason enough to reject it."

Though the Supreme Court has not always broken into traditional conservative and liberal blocs in federal sentencing cases, the more liberal justices will likely be drawn to Dean's claims, while the more conservative justices will likely see matters the government's way. An interesting added element of the case, though one not engaged by the briefs, is the fact that Dean was subject to the harsh stacking rules of Section 924(c), subjecting him to 30 years of mandatory imprisonment for two Section 924(c) convictions rather than just the five years that would be mandated by a single Section 924(c) conviction. The multi-decade mandatory added punishment for multiple Section 924(c) convictions arguably allays any concern that a nominal punishment for Dean's other offenses would undermine Congress' goal of requiring severe additional punishment for using a gun in furtherance of other crimes. In other words, conceptually and practically, the issue in this case feels quite different depending on how many Section 924(c) convictions a defendant is facing.

On April 3, 2017, Chief Justice Roberts delivered the opinion of the Court. Congress has made it a separate offense to use or possess a firearm in connection with a violent or drug trafficking crime. 18 U. S. C. §924(c). That separate firearm offense carries a mandatory minimum sentence of five years for the first conviction and 25 years for a second. Those sentences must be in addition to and consecutive to the sentence for the underlying predicate offense. The question presented is whether, in calculating the sentence for the predicate offense, a judge must ignore the fact that the defendant will serve the mandatory minimums imposed under §924(c).

The Government speaks of Congress's intent to prevent district courts from bottoming out sentences for predicate §924(c) offenses whenever they think a mandatory minimum under §924(c) is already punishment enough. But no such intent finds expression in the language of §924(c). That language simply requires any mandatory minimum under §924(c) to be imposed "in addition to" the sentence for the predicate offense, and to run consecutively to that sentence. Nothing in those requirements prevents a sentencing court from considering a mandatory minimum under §924(c) when calculating an appropriate sentence for the predicate offense. The judgment of the United States Court of Appeals for the Eighth Circuit is reversed, and the case is remanded for further proceedings consistent with the Supreme Court opinion.

In *Dean*, the Court ruled that the Eighth Circuit had been wrong to hold that, "in calculating the sentence for [a] predicate offense, a judge must ignore the fact that the defendant will serve the mandatory minimums imposed under §924(c)."

*Dean* allows judges more freedom deciding prison sentences. *Dean* opinions is notable for its unanimity, swiftness, and ringing endorsement of the abiding role of judicial discretion and clarifies that the judicial discretion if the law of the land. Judicial discretion is used to calculate sentences when the offense calls for a sentence below, between, or above the mandatory minimum.

12

In 2005, the Court decided *Booker v. United States*, and ended the mandatory sentencing guidelines. Since then, the Court have given judges the freedom to meet their responsibility under 18 U.S.C. § 3553(a) to tailor sentences to the crime and to the offender rather than hew to the guideline grid. *Dean* is our most recent case. In *Dean* since the gun was not shot at a person and was instead accidently went off and the fact that there was no breaking and entering the Judge let Dean the freedom of a lower sentence. In this situation too, Laseter did not commit horrific acts or violence. He did not strike no victim with weapon. The Court should take that into consideration and use that also to be another good reason why to use a lesser sentence. Dean got a variance from the sentencing guidelines as a result of not shooting at a person and not breaking into a building. Here, Laseter should get the same consideration since no firearm was used to cause physical force against a person during the drug trafficking crime.

In *Dean*, the Supreme Court of the United States summarized:

(1) When considering a sentence, district courts must: (1) impose a sentence sufficient, but not greater than necessary, to comply with the four purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation ("parsimony principle"); (2) consider the nature and circumstances of the offense and the history and characteristics of the defendant; (3) consider the need for the sentence imposed to serve the four aims of sentencing; and (4) consider the U.S.S.G.

(2) 18 U.S.C. § 924(c) does not restrict the authority conferred on sentencing courts by § 3553(a) to consider a sentence imposed under § 924(c) when calculating a sentence for the predicate count. Although a mandatory sentence under § 924(c) must be imposed "in addition to the punishment provided" for the predicate crime, the limitation says nothing about the length of a non-§ 924(c) sentence, much less about what information a court may consider in determining that sentence.

(3) Nothing prevents a district court from imposing a mandatory-minimum sentence under § 924(c) and as short as a one-day sentence for the predicate crime.

In *United States v. Rodriquez*, 553 U.S. 377 (2008), the Court permitted reliance on a recidivist enhancement for the purpose of determining whether a prior state conviction qualified as a predicate for a federal sentencing enhancement under the Armed Career Criminal Act (ACCA). *Id.* at 393. But the Court cautioned that when a judgment of conviction, charging document, or plea colloquy "do[es] not show that the defendant faced the possibility of a recidivist enhancement, it may well be that the Government will be precluded from establishing that a conviction was for a qualifying offense." *Id.* at 389. In *Carachuri-Rosendo v. Holder*, 570 F.3d 263 (5th Cir.2009), the Court went even further, explaining that in Rodriquez it had "held that a recidivist finding could set the 'maximum term of imprisonment,' but only when the finding is a part of the record of conviction." 130 S.Ct. at 2587 n. 12 (emphasis added).

See also, *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), saying that the state charge the defendant [Laseter] must be charge with recidivist before government can enhance the defendant's drug charge, pursuant to § 851, in the Federal Court per change of the amendment.

## V. LAW REGARDING CONCLUSORY ALLEGATIONS AND WHETHER AN EVIDENTIARY HEARING NEED BE HELD

In this section of the GR, the government merely gives the legal standard for evidentiary hearing per the standard set forth in 28 U.S.C. §§ 2255(a) and (b). Laseter does not object or take exception to this section of the GR. See CvDoc. 11 at 27-28.

## VI. CONCLUSION

In its conclusion to the GR, the government requests that the Court deny Laseter's Motion without any evidentiary hearing. However, for the above and foregoing reasons, Laseter should be eligible for evidentiary hearing so that Laseter may further prove his meritorious grounds for relief, resolve facts in dispute and expand an incomplete record.

14

Respectfully submitted,

Dated: August 20, 2018.

_____
TAURUS RASHONE LASETER
REG. NO. 15642-002
FCI EDGEFIELD
FEDERAL CORR. INSTITUTION
P.O. BOX 725
EDGEFIELD, SC 29824
Appearing *Pro Se*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2018, a true and correct copy of the above and Foregoing Reply to Respondent United States' Response in Opposition to Taurus Rashone Laseter's Motion to Vacate, Set Aside, Or Correct Sentence Pursuant to 28 U.S.C. § 2255 was sent via U. S. Mail, postage prepaid, to Curtis Ivy, Jr., Assistant United States Attorney at United States Attorney's Office, 131 Clayton Street, Montgomery, AL 36104.

_____
TAURUS RASHONE LASETER